United States District Court
Southern District of Texas
**ENTERED**
October 21, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| JUAN DANIEL VALADEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 5:22-CV-00016 |
| | § | |
| THE GEO GROUP, INC., KEEFE | § | |
| COMMISSARY NETWORK, L.L.C. | § | |
| D/B/A ACCESS CORRECTIONS | § | |
| AND NOEL NAVARRO | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff Juan Daniel Valadez's Opposed Motion for Remand, (Dkt. No. 4), and a response filed by Defendant GEO Group, Inc., (Dkt. No. 6). The motion has been referred to this Court for findings of fact and recommendations of law. (Dkt. No. 5). Having considered the parties' filings and applicable law, the Court will **RECOMMEND** to the District Court that Plaintiff's motion, (Dkt. No. 4), be **DENIED**.

### I. Background

This case arises from a slip and fall that occurred on March 11, 2020, at the Rio Grande Detention Center ("RGDC") in Laredo, Texas. (Dkt. No. 1 at 16–17). Plaintiff Juan Daniel Valadez ("Valadez")—a detainee at RGDC at the time of the incident—alleges that he suffered serious injuries when he slipped on a wet patch on the floor while walking toward the microwave room in the H6B Housing Unit. (Dkt. No. 4-1 at 4). RGDC is owned, operated, maintained, or controlled by Defendant GEO Group, Inc. ("GEO") or co-defendant Keefe Commissary Network, LLC d/b/a Access Corrections ("Keefe"). (Dkt. No. 1 at 17). Co-defendant Noelle Navarro ("Navarro") was employed as a kitchen manager by GEO on the day of the incident. (Dkt. Nos. 1 at 27 and 4 at 3).

On October 17, 2019, Valadez, a Texas citizen, filed suit in the 341st Judicial District in Webb County, Texas asserting a premises liability claim against: (1) GEO, a citizen of the State of Florida, the state in which it is incorporated and in which it has its

principal place of business; (2) co-defendant Keefe, a limited liability company whose sole member is a Delaware corporation with its principal place of business in Missouri; and (3) Navarro, a resident of Webb County Texas and citizen of the State of Texas. (*Id.* at 2). On March 14, 2022, GEO removed the action, alleging that Navarro—the sole in-state Defendant—had been improperly joined. (Dkt. No. 1 at 2).

Now pending before the Court is Valadez's Opposed Motion to Remand in which he argues that GEO failed to meet its burden of establishing that Navarro was improperly joined, rendering removal of the instant action improper. (Dkt. No. 4 at 3).

## II. Legal Standards

### a. Removal Jurisdiction

A party may remove an action to federal court only if the federal court possesses original subject matter jurisdiction. *See* 28 U.S.C. § 1441(a). Federal courts "possess only that power authorized by Constitution and statute[.]" *Rasul v. Bush*, 542 U.S. 466, 489 (2004). "The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. § 1331, which provides for '[f]ederal question' jurisdiction, and § 1332, which provides for '[d]iversity of citizenship' jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006). The removing party bears the burden of showing that federal jurisdiction exists, and that removal was proper. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). The removal statute is strictly construed because it "implicates important federalism concerns." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–109 (1941). Further, in evaluating jurisdiction, "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

A court has subject matter jurisdiction based on diversity if there is: (1) complete diversity of citizenship; and (2) an amount-in-controversy greater than $75,000. *See* 28 U.S.C. § 1332(a). "It is well-established that the diversity statute requires 'complete diversity' of citizenship: A district court generally cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). In analyzing whether diversity of citizenship exists, however, a court may disregard the citizenship of parties that have been "improperly joined." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 572

(5th Cir. 2004) (en banc).

   b.   **Improper Joinder**

The doctrine of improper joinder provides a "narrow exception" to the rule of complete diversity. *McDonal v. Abbott Labs*, 408 F.3d 177, 183 (5th Cir. 2005). A district court may disregard a nondiverse defendant's citizenship if the removing party demonstrates that there is "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016) (citing *Smallwood*, 385 F.3d at 573). In this regard, courts need not "determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiffs might do so." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–309 (5th Cir. 2009). To determine whether a plaintiff has a reasonable possibility of recovery against a nondiverse defendant, the Court may conduct a Rule 12(b)(6)-type analysis. *Int'l Energy Ventures Mgmt.*, 818 F.3d at 207 (citing *Smallwood*, 385 F.3d at 573).

In the Fifth Circuit, district courts apply the same federal pleading standard for a 12(b)(6)-type improper joinder analysis as they would for a 12(b)(6) motion to dismiss. *Id.* at 203–04 ("The *Smallwood* opinion instructs us to apply the Rule 12(b)(6)-type analysis, which must mean the entirety of that analysis. Because that analysis is inseparable from the federal pleading standard, this is an instruction to apply the federal pleading standard."); *see also Laudun v. Target Corp.*, 2020 WL 2301366, *4 (W.D. La. 2020) ("[T]he analysis used to determine whether a defendant is improperly joined is the same as that used to determine whether a claim has been stated under Fed. R. Civ. P. 12(b)(6)."), *report and recommendation adopted*, 2020 WL 2247644 (W.D. La. 2020).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain "enough facts to state a claim to relief that is plausible on its face," and must plead those facts with enough specificity to raise a right to relief "above the speculative level." *Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 433 (S.D. Tex. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 555 (2007)). The complaint need not contain detailed factual allegations, but it must set forth "more than labels and conclusions" and do more than merely restate the elements of a cause of action. *Twombly*,

550 U.S. at 555. While all well-pleaded facts are to be accepted as true, legal conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).[1]

## III. Discussion

### a. Individual Employee Liability for Premises Condition

There are two distinct theories of recovery in negligence actions for injuries sustained on a landowner's premises: (1) premises liability and (2) negligent activity. *Morris v. De Luna*, No. DR-20-CV-025-AM-VRG, 2021 WL 2980715, at *5 (W.D. Tex. Feb. 4, 2021), *report and recommendation adopted*, No. DR-20-CV-025-AM/VRG, 2021 WL 2981301 (W.D. Tex. Mar. 18, 2021). Under either theory, the threshold inquiry is whether the defendant owed the plaintiff a duty. *Id.* at *4. Such an inquiry is "a question of law for the court to decide, and that determination is made from the facts surrounding the occurrence in question." *Id.* (quoting *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017)).

Under Texas law, an individual employee may be held liable for a dangerous premises condition "only when the officer or agent owes an *independent* duty of reasonable care to the injured party *apart* from the employer's duty." *Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005) (quoting *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996)) (emphasis added); *see also Solis v. Wal-Mart Stores East, L.P.*, 617 F. Supp. 2d 476, 478 (S.D. Tex. 2008) (citing same). Whether an employee has an independent duty depends on whether the employee "played a *personal role* in creating the dangerous condition at issue[.]" *Grant v. Casas*, No. 5:21-CV-05-DAE, 2021 WL 2792431, at *3 (W.D. Tex. Mar. 4, 2021) (citing *Cisneros v. Belcher*, No. 1:19-CV-728-LY, 2019 WL 11506116, at *4 (W.D. Tex. Nov. 25, 2019), *report and recommendation adopted*, 2019 WL 11506148 (W.D. Tex. Dec. 18, 2019)) (emphasis in original).

An employee defendant plays a "personal role" if they are "directly and personally

---

[1] In contrast to the Fifth Circuit, other circuit courts have applied a more lenient, and thus remand-friendly standard of pleading for improper joinder analyses. *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012) ("When deciding a motion to remand, including fraudulent joinder allegations, we apply a test similar to, but more lenient than . . . a Rule 12(b)(6) motion to dismiss"); *Junk v. Terminix Intern. Co.*, 628 F.3d 439, 445-446 (8th Cir. 2010), *cert. denied*, 132 S. Ct. 94, 181 L. Ed. 2d 24 (2011) (challenging diversity jurisdiction based on fraudulent joinder, defendant faces more demanding burden than for 12(b)(6) motion; question turns on whether plaintiff has colorable claim, not on artfulness of pleadings); *Grancare, LLC v. Thrower*, 889 F.3d 543, 549 (9th Cir. 2018) ("A standard that equates fraudulent joinder with Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits.).

involved in the conduct that caused [the] [p]laintiff's injuries." *Land v. Wal-Mart Stores of Texas*, LLC, No. SA-14-CV-009-XR, 2014 WL 585408, at *4 (W.D. Tex. Feb. 13, 2014) (remand granted where nondiverse defendant "negligently operat[ed] a commercial floor cleaning machine" creating slipping hazard causing plaintiff's accident); *see also Lopez-Monroy v. Wal-Mart Stores Texas, LLC*, No. 3:19-CV-00051, 2019 WL 3302615, at *1 (S.D. Tex. July 23, 2019), *report and recommendation adopted*, No. 3:19-CV-00051, 2019 WL 3753702 (S.D. Tex. Aug. 8, 2019) (remand granted where nondiverse defendant negligently "parked [an unattended] forklift in front of the patron ingress and egress section" causing plaintiff to fall upon entering premises); *Richardson v. Wal-Mart Stores Texas, LLC*, 192 F. Supp. 3d 719, 721 (S.D. Tex. 2016) (remand granted where nondiverse defendant "removed [a] bottle of shampoo [from a spill on the floor] but did not mark the area," whereupon plaintiff slipped).

A defendant might also play a "personal role" in a premises condition if he is an "acting manager on duty" and exercises "personal control" over the area in which the plaintiff was injured at the time of the incident. *Sackett v. Russell Williams & TSA Stores, Inc.*, No. A-13-CA-755-SS, 2013 WL 11274251, at *4 (W.D. Tex. Nov. 18, 2013); *Minjarez v. Wal-Mart Stores Texas*, LLC, No. EP-18-CV-00106-FM, 2018 WL 7291448, at *3 (W.D. Tex. June 19, 2018); *Ille v. Lowe's Home Centers*, LLC, No. 1:20-CV-143-H, 2020 WL 10936102, at *3 (N.D. Tex. Oct. 21, 2020). In contrast, there is no basis to impose a legal duty on a defendant merely by virtue of being a manager. *Monreal v. Walmart Inc.*, No. 2:21-CV-00278, 2022 WL 500588, at *2 (S.D. Tex. Feb. 18, 2022) ("[W]hen the allegations are based entirely on the employee's status as an employee to act generally on behalf of his employer, there is no specific independent duty to the plaintiff on which a claim may be premised."); *Blair v. Home Depot U.S.A., Inc.*, No. MO:21-CV-00252-DC-RCG, 2022 WL 2762216, at *4 (W.D. Tex. Mar. 3, 2022), *report and recommendation adopted*, No. MO:21-CV-00252-DC, 2022 WL 2762212 (W.D. Tex. Mar. 19, 2022*)* ("Plaintiff has failed to cite to any case where a man[a]ger was found to be properly joined that did not have personal involvement in creating the danger.").

Here, Valadez contends that Navarro "played a personal and active role" in causing the wet spot on the floor that proximately caused his injuries. (Dkt. No. 4 at 9). However, Valadez's pleadings do not support such a contention. (*See* Dkt. No. 1 at 15–

19). As Valadez acknowledges in his Motion to Remand, his Original Petition only pleads the following allegations with respect to Navarro:

> Plaintiff encountered a defect in the premises in the form of a wet/slippery substance on the premises floor that was a dangerous hazard. . . . . [which] constituted an unreasonable risk of harm of which . . . Defendant Navarro in his individual capacity, acting within the course and scope of his employment either created, knew of or . . . should have known of . . . . Thus, Navarro, in his individual capacity, w[as] negligent and failed to exercise reasonable care to reduce or eliminate the risk of harm which proximately caused the incident in question and injuries and damages to Plaintiff.

(Dkt. Nos. 1 at 17 and 4 at 9). Based on the conclusory statements above, the Court cannot say that Valadez's Original Petition, vis-à-vis Navarro, contains "enough facts to state a claim to relief that is plausible on its face," let alone that it pleads those facts with enough specificity to raise a right to relief "above the speculative level." *Peacock*, 181 F. Supp. 3d at 433 (quoting *Twombly*, 550 U.S. at 570, 555).

Nowhere in his Original Petition does Valadez actually allege that Navarro personally did something to cause the presence of the wet, slippery substance on the floor. Nor does Valadez ever allege that, at the time of the incident, Navarro was the "acting manager on duty," exercising "personal control" over the area where the incident occurred. *Sackett*, 2013 WL 11274251, at *4. Rather, Valadez simply *concludes* that "GEO Group and/or Access Corrections, its agents, servants and/or employees, including but not limited to Navarro . . . either created, knew of or . . . should have known of" the spill. (Dkt. No. 1 at 17 and 4 at 9). For his claims against Navarro to survive this 12(b)(6)-type analysis, Valadez needed to plead more than mere conclusions. *Twombly*, 550 U.S. at 555. Thus, based on Valadez's pleadings, the Court can find no reasonable basis to predict that Valadez might be able to recover against Navarro. *See Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 200. Accordingly, the Court finds that Navarro was improperly joined.

## IV. Conclusion

For the reasons discussed above, the Undersigned hereby **RECOMMENDS** that the District Court **DENY** Plaintiff's Opposed Motion for Remand, (Dkt. No. 4).

## V. Notice of Right to Object

Within 14 days after being served with a copy of this Report and Recommendation, the parties may file written objections to the findings and recommendations proposed

above. 28 U.S.C. § 636(b)(1). The District Judge will review de novo those portions of the report or specified proposed findings or recommendations to which the party objects. The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by this Court, and may also receive further evidence or recommit the matter to this Court with instructions. *Id.* The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

If a party does not object within 14 days, the party forfeits its right to District Court review. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days after service shall bar an aggrieved party from de novo review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

**SIGNED** on October 21, 2022.

_____
John A. Kazen
United States Magistrate Judge